UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STEPHEN J. MASTRIANNI,           :
           Plaintiff,            :
                                 :
        v.                       :        CA 10-229 M
                                 :
MICHAEL J. ASTRUE,               :
COMMISSIONER OF                  :
SOCIAL SECURITY ADMINISTRATION,  :
           Defendant.            :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

    This matter is before the Court on the request of Plaintiff
Stephen J. Mastrianni ("Plaintiff") for judicial review of the
decision of the Commissioner of Social Security ("the
Commissioner"), denying disability insurance benefits ("DIB"),
under §§ 205(g) and 1631(c)(3) of the Social Security Act, as
amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("the Act"). Plaintiff
has filed a motion to reverse the decision of the Commissioner.
See Plaintiff's Motion to Reverse the Decision of the Commissioner
(Docket ("Dkt.") #8) ("Motion to Reverse"). Defendant Michael J.
Astrue ("Defendant") has filed a motion for an order affirming the
Commissioner's decision. See Defendant's Motion for an Order
Affirming the Decision of the Commissioner (Dkt. #11) ("Motion to
Affirm").

    This matter has been referred to me for preliminary review,
findings, and recommended disposition pursuant to 28 U.S.C. §

636(b)(1)(B). For the reasons set forth herein, I find that the Commissioner's determination that Plaintiff is not disabled is supported by substantial evidence in the record and is legally correct. Accordingly, based on the following analysis, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

### Facts and Travel

Plaintiff was born in 1963 and was forty-one years old as of his alleged onset date. (Record ("R.") at 14, 20, 85, 107) He completed high school and has past relevant work as a spray painter, carpenter, cabinet maker, fertilizer mixer, and demolition worker. (R. at 14, 21-22, 37-38, 120-24)

Plaintiff filed an application for DIB on January 4, 2008, (R. at 7, 107), alleging disability since December 6, 2004, due to asthma, restricted breathing, herniated discs, cough syncope,[1] sinusitis, rhinitis, and a degenerative left shoulder, (R. at 45, 111). The application was denied initially, (R. at 7, 45), and on reconsideration, (R. at 7, 51), and Plaintiff requested a hearing before an administrative law judge ("ALJ"), (R. at 7, 54). A hearing was held on November 16, 2009, at which Plaintiff, represented by counsel, appeared and testified, as did an impartial vocational expert, Kenneth Smith (the "VE"). (R. at 7) On

---

[1] Syncope is defined as: "Loss of consciousness and postural tone caused by diminished cerebral blood flow." Stedman's Medical Dictionary 1720 (26th ed. 1995).

December 21, 2009, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. at 7-16) The Decision Review Board selected Plaintiff's case for review, (R. at 4), but did not complete its review of the claim during the ninety day period, (R. at 1-3), thereby rendering the ALJ's decision the final decision of the Commissioner, (R. at 1). Plaintiff thereafter filed this action for judicial review.

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

## Standard of Review

Pursuant to the statute governing review, the Court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[2] are conclusive.

_____

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420 (1971))).

### Law

To qualify for DIB, a claimant must meet certain insured status requirements,[3] be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act. See 42 U.S.C. § 423(a). The Act defines disability as

---

Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales, 402 U.S. at 401).

[3] The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2008. (R. at 8, 9)

4

the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. 423(d)(1)(A). A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[4] 20 C.F.R. § 404.1521(a) (2010). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a) (2010).

The Social Security regulations prescribe a five step inquiry for use in determining whether a claimant is disabled. See 20

---

[4] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) (2010). Examples of these include:

> (1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2)  Capacities for seeing, hearing, and speaking;
> (3)  Understanding, carrying out, and remembering simple instructions;
> (4)  Use of judgment;
> (5)  Responding appropriately to supervision, co-workers and usual work situations; and
> (6)  Dealing with changes in a routine work setting.

Id.

C.F.R. § 404.1520(a) (2010); see also Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy. See 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. See Seavey v. Barnhart, 276 F.3d at 4. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity during the period from December 6, 2004, the alleged onset of his disability, through December 31, 2008, his date last insured, (R. at 9); that Plaintiff's severe obstructive sleep apnea, asthma, obesity,

degenerative joint disease of the left shoulder, degenerative disc disease of the lumbar spine, vertigo/syncope episodes, and right distal fibula fracture, status post open reduction internal fixation, constituted severe impairments, (id.); that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, (R. at 10); that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, with the postural and environmental limitations of an inability to reach overhead, an ability to occasionally climb, crawl, stoop, and balance, an inability to work unprotected at heights, an inability to be exposed to dangerous machinery or to operate automotive equipment in the work place, a limitation to unskilled work tasks, a requirement to stand once every hour for up to five minutes at a time, and an ability to work in conditions where levels of dust, gases, or other airborne pulmonary irritants are comparable to those in public office buildings (R. at 11); that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the above RFC, (R. at 13); that Plaintiff was unable to perform any past relevant work, (R. at 14); that, considering his age, education, work experience, and RFC, Plaintiff was capable of performing jobs which existed in significant numbers in the national economy, (R. at 15); and that Plaintiff had not

been under a disability, as defined in the Act, from December 6, 2004, through December 31, 2008, the date last insured, and, therefore, was not entitled to a period of disability or DIB, (R. at 8, 15).

## Errors Claimed

Plaintiff alleges that: (1) the ALJ improperly failed to adopt probative and critical evidence with respect to Plaintiff's syncope episodes; and (2) Plaintiff's severe syncope episodes would preclude him from performing even sedentary work.

## Discussion

I. **The ALJ did not fail to adopt probative and critical evidence regarding Plaintiff's syncope episodes.**

Plaintiff argues that substantial evidence does not support the ALJ's decision because the ALJ did not give proper weight to Plaintiff's treating physicians' evidence regarding his syncope episodes, see Memorandum in Support of Plaintiff's Motion to Reverse the Decision of the Commissioner ("Plaintiff's Mem.") at 4, instead finding Plaintiff's allegations to be subjective complaints which were not fully substantiated by clinical signs or objective findings, id. at 3-4.[5] Specifically, Plaintiff contends that the

---

[5] The Court notes that in some instances Plaintiff's Mem. fails to comply with the District of Rhode Island Local Rules ("DRI LR") because it does not include citations to the administrative record. See e.g., Plaintiff's Mem. at 3-4 ("The ALJ's determination that there are subjective complaints that were not fully substantiated by clinical signs is clearly contradictory to an overwhelming amount of evidence in the record.")(no citation); id. at 4 ("The Claimant's treating physicians almost always cite [syncope] as the Claimant's most prominent problem,

ALJ failed to consider appropriately the medical evidence of Asthma and Allergy Physicians of R.I. ("AAPRI"), Plaintiff's orthopedic surgeon, Greg Sawyer, M.D., and Plaintiff's primary care physician, Mary L. Giovetti, M.D., see Plaintiff's Mem. at 4.

Evaluation of opinion evidence is governed by 20 C.F.R. § 404.1527.  Section 404.1527(d) provides in relevant part that:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2) (2010); see also Social Security Ruling

---

and are actually careful not to treat him for other issues if it could interfere with his syncope episodes.")(no citation); see also DRI LR Cv 7(d)(4)("Any memorandum filed in a case involving an appeal from the ruling or determination of an administrative tribunal, including but not limited to Social Security disability determinations, shall include all pertinent citations to the administrative record."); cf. US v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

("SSR") 96-2p, 1996 WL 374188, at *2 (S.S.A.)(listing requirements for giving controlling weight to treating source's opinion); id. ("It is an error to give an opinion controlling weight ... if it is not well-supported by medically acceptable clinical and laboratory techniques or if it is inconsistent with the other substantial evidence in the case record."). In evaluating medical opinions, an ALJ is directed to consider the existence of an examining relationship, the existence of a treating relationship, the length, nature, and extent thereof, the supportability of an opinion, the consistency of an opinion with the record as a whole, the specialization of the source, and any other factors which the claimant brings to the adjudicator's attention. See 20 C.F.R. § 404.1527(d)(2)-(6). Section 404.1527(e) further provides that:

> Opinions on some issues, such as the examples that follow, are not medical opinions ... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.
> > (1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.
>
> ....

20 C.F.R. § 404.1527(e); see also Rodriguez, 647 F.2d at 222 ("[T]he resolution of conflicts in the evidence and the

determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts."); cf. SSR 96-5p, 1996 WL 374183, at *2 (S.S.A.)(noting that "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance" because that "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled").

Regarding syncope, the ALJ stated: "Overall, the records reflect that [Plaintiff] has had a substantial amount of subjective complaints that have not been fully substantiated by clinical signs or objective findings. This is particularly true of his alleged episodes of syncope."[6] (R. at 12) Plaintiff cites the encounter notes from his visits to AAPRI as evidence that he has been treated for syncope episodes since at least 2004, Plaintiff's Mem. at 4 (citing (R. at 161-73)), arguing that the ALJ failed to adopt this evidence when he found Plaintiff to have made subjective complaints not fully substantiated by clinical signs or objective findings, id. at 3. Specifically, AAPRI indicated that Plaintiff's coughing fits triggered episodes of syncope. (R. at 165) However, these

_____

[6] Plaintiff in essence admitted as much at his hearing, which occurred after his date last insured, when he testified that his doctors "haven't figured it [complaints of blacking out] out yet." (R. at 23)

11

office notes corroborate the ALJ's finding, as nothing in AAPRI's records constitutes a clinical sign or objective finding by any physician or proof by witnesses of any syncope episode. As the records show, AAPRI recorded Plaintiff's reports of syncope episodes and referred him to a specialist, but noted no clinical signs or objective findings of syncope. (R. at 161, 165, 171, 172)

The records from AAPRI first mention syncope-like symptoms on a visit by Plaintiff on December 8, 2004, the notes stating "[Plaintiff] had an episode at work in which he felt dizzy and then fell into a dumpster. He **reports** that his boss was with him and **noted** that he did lose consciousness for several seconds." (R. at 161)(bold added). On January 12, 2005, Plaintiff visited AAPRI again. (R. at 165) The record for that visit reflects in part: "He **reports** that while at the pulmonary lab, he did have a coughing fit and lost consciousness for several seconds."[7] (Id.)(bold added). On June 21, 2005, the notes, under the "subjective" heading, indicate: "[Plaintiff is] coughing a lot, vomiting again and passed out again." (R. at 171) Finally, the notes from Plaintiff's last visit to AAPRI in the record, on August 2, 2005, state "[Plaintiff's] PFT [Pulmonary Function Test] stable. Passing out under evaluation." (R. at 172)

A notation of Plaintiff's self-report of symptoms by a

---

[7] The Court notes that nothing from the pulmonary lab corroborating this claim is found in the record.

treating or examining source does not make that statement a clinical sign or objective finding. See 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged ...."); see also Avery, 797 F.2d at 20 ("[A] claimant's statement as to his pain shall not alone be conclusive evidence of disability[.]")(internal quotation marks omitted); Steward v. Barnhart, 222 F.Supp.2d 60, 64 (D. Me. 2002) ("A claimant's statements about his pain will not be sufficient, standing alone; there must be medical evidence of an impairment that could reasonably be expected to produce the pain."). Furthermore, the letter from Talik K. Verma, M.D., of Lung Diseases & Respiratory Care, Inc., to Dr. Giovetti referencing Dr. Zwetchkenbaum, a doctor at AAPRI, and Dr. Zwetchkenbaum's reported advice to Plaintiff to switch occupations, does not constitute such an objective finding.[8] (R. at 180) At best, the letter can be interpreted as an acknowledgment that Plaintiff has syncope, but that Plaintiff is still capable of working in a field other than carpentry or demolition. (Id.) Because the recommendation from

---

[8] The letter, dated July 12, 2005, states in relevant part: "Currently the patient is not working. He has worked as a carpenter and in demolition. Dr. Zwetchkenbaum has advised he switched [sic] occupations due to the risk of syncope and he is presently attempting to become re-schooled into another field such as health care." (R. at 180)

Dr. Zwetchkenbaum does not appear in the record, the letter could also be read as another uncorroborated claim from Plaintiff. (Id.)

Regarding the proffered evidence from AAPRI, the Court has read the entire record and finds that a reasonable mind could have reached the same conclusion as the ALJ. See Irlanda Ortiz, 955 F.2d at 769 ("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."). The records from AAPRI do not constitute clinical signs or objective findings of syncope.

Plaintiff additionally contends that Dr. Sawyer's decision not to operate on Plaintiff in 2009 constituted a refusal on the doctor's part to operate for fear that Plaintiff's "history of severe syncope episodes, combined with his sleep apnea and asthma would interfere with the treatment," Plaintiff's Mem. at 4, and cites only this note as proof of his broad assertion that "[Plaintiff's] treating physicians ... are actually careful not to treat him for other issues if it could interfere with his syncope episodes," id. Plaintiff contends that this note is thus probative and critical evidence of his syncope. See id.

The ALJ did not specifically refer to the note referenced by Plaintiff in his decision. However, the note is not as explicit as Plaintiff suggests. It states in relevant part:

> We discussed that he has hardware in his right ankle that can be removed, but does not require removal unless he

> has future problems. Given the fact that Mr. Mastrianni
> has a history of sleep apnea, [a]sthma, chronic kidney
> disease, and episodes of blacking out, I do not feel that
> putting him through an elective hardware removal
> procedure is in his best interest.

(R. at 449) Plaintiff ignores the first quoted sentence and discounts the "elective" nature of the procedure while claiming in exaggerated terms that Dr. Sawyer feared Plaintiff's "severe" syncope episodes. See Plaintiff's Mem. at 4. When read in context, Dr. Sawyer's reason for not performing the surgery is vague at best and does not definitively constitute a refusal to perform treatment because of syncope. When the evidence can be interpreted in conflicting ways—including possible conflicting inferences—those conflicts are for the ALJ to resolve, not the Court. See Rodriguez, 647 F.2d at 222 ("[T]he drawing of permissible inference[s] from evidentiary facts are the prime responsibility of the [Commissioner].")(quoting Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)); see also Irlanda Ortiz, 955 F.2d at 769; Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987)("Conflicts in the evidence are, assuredly, for the [Commissioner]—rather than the courts—to resolve.").

Plaintiff does not specifically refer to other notes from Dr. Sawyer in the record. Nevertheless, these notes also do not constitute clinical signs or objective findings. While Dr. Sawyer includes Plaintiff's complaints of syncope, there is no documented

report of someone witnessing such an episode, nor are there any clinical signs, objective findings, or third party statements corroborating Plaintiff's complaints.  (R. at 525, 529)[9]

The ALJ accorded the opinion of Dr. Giovetti, Plaintiff's treating primary care physician, finding him "totally disabled,"[10] (R. at 405), "no evidentiary weight," (R. at 14). The ALJ found it to be inconsistent with the weight of the medical evidence in the record, stating: "The objective evidence of record fails to support this opinion.  No one has observed a syncope episode and the claimant has been neurologically intact."  (Id.); see also SSR 96-2p, 1996 WL 374188, at *2.  Plaintiff challenges this determination, claiming that "the ALJ gave no weight[] what-so-ever to the overwhelming amount of evidence from the Claimant's treating physicians with respect to his syncope episodes."  Plaintiff's Mem. at 4.  Thus, Plaintiff implicitly argues that proper weight was not afforded to Dr. Giovetti's opinion finding Plaintiff "totally

_____

[9] Plaintiff claims to have suffered a syncope episode while at Dr. Sawyer's office and alleges "he" saw Plaintiff's eyes roll back during the incident.  (R. at 30)  However, notes from Plaintiff's visit to Dr. Sawyer's office on that day simply state "While here at his appointment, the patient had a brief episode of lightheadedness and **reported** passing out."  (R. at 525)(bold added).

[10] Dr. Giovetti checked "Yes" on a form from an insurance company after the following question: "After reviewing the attached work and educational history, do you now consider the above patient to be totally disabled from all occupations for which he/she is reasonably fitted by education, training or experience?"  (R. at 405)  In the area for explanation, Dr. Giovetti wrote "[Plaintiff] has frequent syncopal episodes as well as chronic back pain."  (Id.)

disabled."[11]

However, as the ALJ stated and as previously observed by this Court, there is no evidence in the record of clinical signs or objective findings by any physicians regarding syncope, nor have documented third parties witnessed any syncope episodes.[12]  (R. at 13)  This holds true for Dr. Giovetti, who, despite asserting that Plaintiff's post-tussive syncope was permanent, (R. at 417), only recorded Plaintiff's complaints of syncope episodes without having witnessed such an episode or noting clinical signs or objective findings, (R. at 188, 200, 202, 274-75, 305, 312, 318, 394, 409-10, 412-13, 418-19, 427, 444-45, 451-55, 457, 459-60, 464).[13]  In fact,

_____

[11] While Plaintiff does not advance this argument explicitly, by arguing that the ALJ failed to adopt evidence with respect to Plaintiff's syncope, Plaintiff's Mem. at 3, claiming that if the proper weight had been afforded to that evidence the ALJ would not have found Plaintiff's complaints of syncope to be subjective with no clinical signs or objective findings, id. at 4, and alleging that this condition made Plaintiff unable to perform even sedentary work, id., Plaintiff implicitly argues that Dr. Giovetti's opinion finding Plaintiff to be completely disabled should be afforded controlling weight over the contradictory opinion of the two state agency physicians, upon whose findings the ALJ relied in his ruling, see id. at 3-4.

[12] See n.9.

[13] Often syncope is noted by Dr. Giovetti under the "Chief Complaint" heading of her notes, with no objective findings or tests to accompany the complaint.  (R. at 305)("Had blackout episode 'last weekend.'"); (R. at 312)("Complains of asthma attack 'severe' Wed. with blackout."); (R. at 394)("Still having blackouts."); (R. at 419)("Blacked out on 5/2/08 for 15 sec."); (R. at 427)("Called ambulance because he blacked out."); (R. at 445)("Blacked out on 12/21/07."); (R. at 454)("Had blackout 6/19"); (R. at 460)("Blacked out last Tuesday."); (R. at 464)("Still having blackouts.").  Mentions of syncope also appear under the "Subjective Comments" field, again without objective findings or tests.  See (R. at 188)("[Patient] has ... syncope."); (R. at 202)("No new episodes of syncope.").

17

as the ALJ so found, Plaintiff's physical examinations have been benign regarding syncope, and a carotid artery exam was also benign.[14]  (R. at 11)

Moreover, Dr. Giovetti's opinion finding Plaintiff to be totally disabled is an opinion on an issue reserved to the Commissioner and thus is not entitled to controlling weight or special significance.  <u>See</u> SSR 96-5p, 1996 WL 374183, at *2.  In addition, it appears from the record that Dr. Giovetti did not actually treat Plaintiff's syncope.  (R. at 199)("Syncope - continue evaluation with Dr. Verma, Dr. Landry."); (R. at 201)("Syncope - see neurologist."); (R. at 274)("Post-tussive syncope - last episode 9/07[;] continue meds - see Dr. Zwetchkenbaum for follow up."); (R. at 275)("Sees Dr. Zwetchkenbaum for ... syncope."); (R. at 444) ("Post-tussive syncope - continue meds; follow up with Dr. Zwetchkenbaum."); (R. at 445)("Has been followed by Dr. Zwetchkenbaum for post-tussive syncope.").  Plaintiff's testimony supports this inference.  (R. at 25)(stating that Dr. Giovetti is "like my family doctor. She sends me the referrals to see all of these other doctors.  And takes care of what ... I need for medication for my asthma.").

Furthermore, Dr. Giovetti's opinion finding Plaintiff totally

---

[14] The exam, dated January 5, 2005, is for the stated purpose of Plaintiff being symptomatic of syncope.  (R. at 203)  The Conclusion notes "Minimal plaque formation left external carotid artery with no significant hemodynamic stenosis. Vertebral flow was normal."  (<u>Id.</u>)

disabled is not consistent with the opinions of John Bernardo, M.D., and Thomas Bennett, M.D., non-examining medical consultants for Disability Determination Services ("DDS").  (R. at 347-54, 376)  Dr. Bernardo found that Plaintiff was capable of sitting for about six hours in an eight-hour workday and standing and/or walking for about six hours in an eight-hour workday, (R. at 348), capable of occasionally climbing stairs, balancing, stooping, kneeling, crouching, or crawling, (R. at 349), limited in overhead reaching and lifting with his arms and shoulders, (R. at 350), and needing to avoid concentrated exposure to extreme cold, heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards, (R. at 351), and Dr. Bennett later affirmed Dr. Bernardo's assessment, (R. at 376).[15]

This conflict in the evidence between the opinions of Dr. Giovetti and Drs. Bernando and Bennett was for the ALJ to resolve, not the Court.  See Irlanda Ortiz, 955 F.2d at 769; Evangelista, 826 F.2d at 141.  The ALJ in the present case determined that the opinions of Drs. Bernardo and Bennett constituted substantial evidence and discounted Dr. Giovetti's opinion as being inconsistent with that and other evidence in the record.  (R. at 14) ("[T]he state agency physician['s] [opinion] ... is afforded substantial evidentiary weight as it is consistent with the record as a whole

---

[15] It should be noted that Dr. Bernardo stated that Plaintiff had cough syncope in his analysis of Plaintiff's exertional limitations although he concluded that it was not disabling.  (R. at 348)

and is based on the physician's particular and detailed knowledge of the standard of disability as set forth by the Administration."). This is well within the ALJ's purview according to the First Circuit. See Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991)(citing Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982)(affirming the Secretary's adoption of the findings of a non-testifying, non-examining physician and permitting those findings to constitute substantial evidence, in the face of a treating physician's conclusory statement of disability)); see also Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988)("It is within the [Commissioner's] domain to give greater weight to the testimony and reports of medical experts who are commissioned by the [Commissioner]."); SSR 96-6p, 1996 WL 374180, at *3 (S.S.A.)("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). This is because "state agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i) (2010); see also SSR 96-6p, 1996 WL 374180, at *2 ("State agency medical and psychological consultants are highly

qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act.").

It is clear that the ALJ considered the required factors in determining the weight to be given to the opinion of Dr. Giovetti. See 20 C.F.R § 404.1527(d). He addressed the consistency of the opinion with the other evidence of record, see 20 C.F.R. § 404.1527(d)(4); see also (R. at 14)("The state agency physician finding the claimant could meet the demands of light exertion with postural and environmental limitations ... is consistent with the record as a whole,"); (id.)("[T]he opinion by ... Mary Giovetti, M.D., ... is inconsistent with the weight of the medical evidence."), and the supportability of the opinion, see 20 C.F.R. § 404.1527(d)(3); see also (R. at 14)("The objective evidence of record fails to support this opinion [of Dr. Giovetti]. No one has observed a syncope episode and the claimant has been neurologically intact."). Further, the ALJ was aware of the treating relationship Plaintiff had with Dr. Giovetti. See 20 C.F.R. § 404.1527(d)(2); see also (R. at 14)(referring to Dr. Giovetti as "claimant's treating primary care physician"). The Court, therefore, finds that the ALJ evaluated the opinion of Plaintiff's treating physician in conformance with the applicable regulations.

The Court finds that the ALJ's evaluation of the evidence from AAPRI, Dr. Sawyer, and Dr. Giovetti was proper. The Court

additionally finds that the ALJ's determination to accord Dr. Giovetti's opinion no weight is supported by substantial evidence in the record. Therefore, I recommend that Plaintiff's first claim of error be rejected.

## II. The ALJ did not completely ignore Plaintiff's syncope in determining Plaintiff's RFC.

Plaintiff next asserts that the ALJ completely ignored his syncope condition and that this condition would preclude him from performing even sedentary work, thus implicitly claiming that the ALJ erred in his RFC assessment which found Plaintiff capable of performing such sedentary work as assembler, hand-packager, and inspector.[16] See Plaintiff's Mem. at 4; (R. at 15). Plaintiff contends that the ALJ gave no weight to Plaintiff's syncope symptoms and ignored the weight of the evidence. Plaintiff's Mem. at 4.

The claim that the ALJ completely ignored Plaintiff's syncope condition and evidence relating thereto is inaccurate. The ALJ took the entire record into account and determined that Plaintiff had a

---

[16] While the state agency physicians did not limit Plaintiff to sedentary work, (R. at 347-54, 376), the ALJ found Plaintiff limited to such work as a result of a fractured fibula that occurred after the state agency physicians gave their opinions, (R. at 14). Sedentary work is defined within the regulations as:

> work [that] involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR § 404.1567(a) (2010).

substantial amount of subjective complaints regarding syncope that were not fully substantiated by clinical signs or objective findings. (R. at 10-13) When discussing Plaintiff's severe impairments, the ALJ noted: "The claimant has complained of symptoms related to vertigo/syncope episodes, but there have been no clinical signs or objective findings to substantiate the alleged symptoms." (R. at 10) Nevertheless, the ALJ still gave Plaintiff the benefit of the doubt, finding the syncope to be a severe impairment. (Id.) It is thus clear that the ALJ did not "ignore" Plaintiff's syncope.

In addition, regarding the evidence related to Plaintiff's syncope, the ALJ accounted for both Plaintiff's complaints of syncope episodes in five different exhibits on the record and the carotid artery exam.[17] (R. at 11)("The claimant has complained of syncope episodes (2F, 4F, 9F, 18F, 20F). There have been no objective findings to substantiate this claim. His physical and neurological examinations have been benign in this regard. A carotid artery exam was also benign (5F).""). Rather than ignore the proffered evidence, the ALJ instead compared it to the record as a whole, finding no objective findings or tests regarding syncope to corroborate Plaintiff's complaints.[18]

---

[17] See n.14.

[18] The Court notes that the ALJ properly considered the necessary factors in evaluating Plaintiff's subjective complaints. (R. at 11)("In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR [§] 404.1529 and SSRs 96-4p and 96-7p."); see also

Plaintiff's implicit claim that his syncope would prevent him from performing work consistent with the ALJ's RFC finding is not supported by the objective medical evidence in the record.  <u>See</u> Plaintiff's Mem. at 4.  As the ALJ so found, no doctor indicated any such functional limitation.  (R. at 12)("None of [Plaintiff's] treating or examining sources have submitted functional assessments indicating restrictions that would preclude the ability to perform a job consistent with the residual functional capacity as found herein.").  Dr. Giovetti did state that, in her opinion, Plaintiff's post-tussive syncope was permanent and that he could be expected to have syncope episodes in the future, (R. at 417), but did not note any restrictions inconsistent with the RFC assessed by the ALJ, (<u>id.</u>).  In addition, while Dr. Giovetti opined that Plaintiff was "totally disabled," (R. at 405), she did not cite any specific restrictions regarding his ability to work, (<u>id.</u>), and, as previously noted, the decision that one is disabled is to be made

<hr />

<u>Avery v. Sec'y of Health & Human Servs.</u>, 797 F.2d 19, 29 (1st Cir. 1986)(listing factors relevant to symptoms, such as pain, to be considered); 20 C.F.R. § 404.1529(c)(3) (2010) (same); SSR 96-7p, 1996 WL 374186, at *3 (same).  Plaintiff was thoroughly questioned regarding his daily activities, (R. at 27-28), functional restrictions, (R. at 28-29), medications, (R. at 25-26), prior work record, (R. at 21-22), frequency and duration of pain (R. at 29-32, 35-36), and measures other than treatment used to relieve his symptoms, (R. at 29, 33), in conformance with the regulations, <u>see</u> <u>Frustaglia v. Sec'y of Health & Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987)("The ALJ thoroughly questioned the claimant regarding his daily activities, functional restrictions, medication, prior work record, and frequency and duration of the pain, in conformity with the guidelines set out in <u>Avery</u> regarding the evaluation of subjective symptoms.")(internal citation omitted); <u>Avery</u>, 797 F.2d at 29; 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, at *3.

by the Commissioner, not a doctor, <u>see</u> 20 C.F.R. § 404.1527(e); <u>see also</u> <u>Rodriguez</u>, 647 F.2d at 222; SSR 96-5p, 1996 WL 374183, at *2.

Moreover, while no treating or examining doctor has noted any restrictions regarding Plaintiff's syncope inconsistent with the ALJ's RFC assessment, Drs. Bernardo and Bennett reviewed Plaintiff's medical records and found Plaintiff capable of work-related activities consistent with that assessment. (R. at 348-51, 376) (finding Plaintiff capable of sitting for about six hours in an eight-hour workday and standing and/or walking for about six hours in an eight-hour workday; capable of occasionally climbing stairs, balancing, stooping, kneeling, crouching, or crawling; limited in overhead reaching and lifting with his arms and shoulders; and needing to avoid concentrated exposure to extreme cold, heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards). Thus, the ALJ clearly weighed the medical evidence in determining Plaintiff's RFC and did not ignore it.

Moving beyond the medical evidence, the ALJ also took note of Plaintiff's testimony in making his RFC finding, (R. at 13), despite Plaintiff's claims to the contrary, Plaintiff's Mem. at 4. Plaintiff testified that his syncope episodes occur once or twice every two months and that it takes him approximately two hours to recover from an episode. (R. at 30, 31) However, the ALJ found this testimony inconsistent with the medical record. (R. at 13) ("The claimant's allegation that he has blackouts several times per

25

month is not supported by the record. No treating or examining source has witnessed any such blackout nor has there been any clinical sign or objective findings noted on examinations.").

In addition to the frequency of his syncope episodes, Plaintiff also made allegations at his hearing as to the limiting affects of his syncope, (R. at 27-31), and claims that the ALJ completely ignored this testimony, Plaintiff's Mem. at 4. Contrary to Plaintiff's assertion, however, it appears that the ALJ took Plaintiff's testimony into account when making his RFC finding. Plaintiff attested to being scared to drive because of his syncope episodes, (R. at 27-28), and the ALJ found Plaintiff unable to be exposed to dangerous machinery or to operate automotive equipment in the workplace, (R. at 11).[19] Thus, the ALJ took some of Plaintiff's testimony into account, but found part of it not entirely credible as it was not consistent with objective medical evidence and the RFC. (R. at 13)("[Plaintiff's] statements concerning ... [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. [Plaintiff's] allegations as to symptom severity and

_____

[19] Dr. Bernardo (and thus Dr. Bennett, who affirmed Dr. Bernardo's finding) did not make an explicit finding regarding driving and operating machinery. The doctor found Plaintiff "able to do all Activities of Daily Living," (R. at 348), and noted that Plaintiff should avoid concentrated exposure to hazards such as machinery and heights, (R. at 349), but when asked to identify hazards to be avoided the doctor merely noted: "Asthma/Chronic Obstructive Pulmonary Disease precautions," (R. at 351), without any reference to automotive equipment. As such, it is a reasonable inference that the restriction on Plaintiff's operation of automotive equipment by the ALJ was influenced by Plaintiff's testimony.

resulting functional limitations are not supported by the medical evidence to the degree alleged."). Because Plaintiff does not challenge the ALJ's credibility finding, the Court need not address it here.

The Court finds that the ALJ did not ignore Plaintiff's syncope condition. Instead, the ALJ examined the medical evidence of record regarding syncope and found a lack of clinical signs or objective findings to support Plaintiff's subjective complaints. This finding is supported by substantial evidence in the record. The Court also finds that the ALJ did not err in his RFC finding, which Plaintiff implicitly challenges. No doctor noted any restrictions regarding Plaintiff's syncope inconsistent with the RFC finding, while two DDS doctors found Plaintiff capable of activities consistent with it. As such, the ALJ's RFC finding is supported by substantial evidence in the record. Therefore, I recommend that Plaintiff's second claim of error be rejected.

**Summary**

The Court finds that the ALJ properly evaluated the opinions of Plaintiff's treating physician and properly weighed the evidence regarding Plaintiff's syncope episodes. The Court further finds that the ALJ's determination that Plaintiff was capable of performing sedentary work with certain nonexertional limitations is supported by substantial evidence in the record.

## Conclusion

The Court finds that the ALJ's determination that Plaintiff is not disabled within the meaning of the Act is supported by substantial evidence in the record and is legally correct. Accordingly, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/  David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
July 13, 2011